UNITED STATES, Appellee

v

STEVEN E. BARNHARDT, Fireman Apprentice, U. S. Coast Guard,
Appellant

22 USCMA 134, 46 CMR 134

No. 25,868

February 9, 1973

*Lieutenant Michael T. Leibig,* USCGR, argued the cause for Appellant,
Accused.

*Lieutenant John O. Colvin,* USCGR, argued the cause for Appellee,
United States.

## Opinion of the Court

QUINN, Judge:

The question before us is the effect of a grant of immunity issued to the accused to obtain his testimony against another person, when the grant was given before the convening authority acted on the record of the accused's conviction by general court-martial for an offense connected with the charges against the other accused.

On September 10, 1971, the accused was convicted, on his plea of guilty, for willful damage to the starboard reduction gear of the USCG cutter *Absecon* and was sentenced to a bad-conduct discharge, confinement at hard labor for one year, and accessory penalties. While the record of his trial was pending review by the convening authority, Commander, Fifth Coast Guard District, related charges against Petty Officer Daniels were scheduled for trial. When the Government indicated that it proposed to call the accused as a witness against Daniels, the accused's counsel "made it known" that the accused would refuse to testify "unless he was given immunity . . . coextensive with his right to silence . . . protection of the widest scope recognized by the law." As a result, two documents captioned "Grant of Immunity" were issued to the accused. In pertinent part, the documents granted "immunity from further prosecution for any criminal acts" connected with the damage to the reduction gear and specifically extended to "any false statement" made by the accused. In due course, the accused testified at Daniels' trial. Thereafter, the convening authority acted in the accused's case. He approved the findings of guilty, but modified the sentence to reduce the period of confinement to nine months to conform that punishment with the sentence provision of a pretrial agreement with the accused.

As perceived by appellate defense counsel, law and the language of the

grant of immunity require that the accused's conviction be set aside and the charge against him be dismissed. The legal argument is primarily predicated upon Frank v United States, 347 F2d 486, 491 (DC Cir 1965), *petition for cert dismissed,* 382 US 923 (1965) in which a divided Court of Appeals held that the "Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony [to a grand jury] relating to the matters involved in the conviction" because such action would violate the prohibition of the federal immunity statute [47 USC § 409(1)] against subjecting an individual "to any penalty or forfeiture for or on account of any transaction . . . concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify." Responding to the same argument, the Court of Military Review below observed that the United States Supreme Court had "indicated plainly its disagreement with" *Frank* in Katz v United States, 389 US 347, 349, footnote 3, 19 L Ed 2d 576, 88 S Ct 507 (1967). It also remarked that the retroactive effect accorded a grant of immunity in the *Frank* case was contrary to the Supreme Court's determination that a conviction already had is not extinguished by a subsequent grant of immunity as to other aspects of the criminal transaction, since the "traditional purpose of immunity statutes [is] to protect witnesses only as to the future." Reina v United States, 364 US 507, 513, 5 L Ed 2d 249, 255, 81 S Ct 260 (1960). The Court of Military Review concluded that "the law regarding the operative effect of a grant of immunity does not require" that the accused's conviction be vacated.

Arguing that the Court of Military Review misconstrued the import of *Katz* and *Reina,* appellate defense counsel contends that those cases are not opposed to *Frank.* They maintain that in each of those cases the conviction was final, whereas in *Frank,* as in this case, appellate review was incomplete at the time of the grant of immunity. The opinion in *Katz* refers to affirmance of the conviction by the Court of Appeals, but it does not suggest that the accused's time to file for certiorari by the Supreme Court had expired, or even that the matter of finality was relevant to the issue. We need not determine, however, whether finality of conviction is important where the accused has, previous to the grant, remained silent as to his guilt; the accused did not remain silent here.

According to appellate defense counsel, a grant of immunity is an "exchange" for the accused's right to remain silent. The element of exchange is apparent in the federal immunity statute upon which he relies in the prohibition against prosecution where the individual is compelled to testify "after having claimed his priviledge against self-incrimination." When an accused enters a voluntary plea of guilty at his trial, as the accused here did, he voluntarily surrenders his right to remain silent. "Once [the accused] . . . entered a plea of guilty and was convicted," we said in United States v Gilliland, 10 USCMA 343, 345, 27 CMR 417, 419 (1959), ". . . he could not later refuse to testify on the ground of self-incrimination." In that case, a proposal by the accused to testify against another in regard to the same criminal incident "amounted to nothing." *Id.* In terms of appellate defense counsel's own argument, therefore, not only was there nothing the Government could receive in exchange for the grant of immunity, insofar as it related to the same offense, but the Government would lose a conviction it had already obtained on the basis of the accused's voluntary plea of guilty. Thus, even if *Frank* has continued vitality, its rationale is inapplicable. We agree with the Court of Military Review, therefore, that legal principle and precedent did not bar appellate review of accused's case.

Considering the language of the grant of immunity, the Court of Military Review pointed out that the grant "did not express any promise" to exonerate the accused from responsibility for the offense of which he

stood convicted. It further noted that the accused did not contend that the convening authority had agreed to take such action if he testified at Daniels' trial. See United States v Gilliland, supra at 345, 27 CMR at 419. The accused does not challenge the correctness of these observations, but he maintains that the text of the grant implicitly prohibits continuation of further proceedings in the case. As thus construed, the findings of guilty could never be approved and the sentence could never be ordered into execution.

A grant of immunity worded like that in this case was before us in United States v Vogel, 18 USCMA 160, 39 CMR 160 (1969). The construction accorded the grant by defense counsel in *Vogel* did not require the Court to consider the effect of the grant upon the approved findings of guilty and the sentence. However, Judge Ferguson's views in dissent led him to comment on the possible consequences of the grant. Like Vogel's counsel, Judge Ferguson did not construe the grant as operating, automatically, to vacate the adjudication of the court-martial or to prohibit completion of the appellate review required by the Uniform Code. He construed the provision for immunity "from further prosecution" as a *possible* bar to retrial if the conviction were overturned. Without considering whether all of Judge Ferguson's construction of the language of the grant was correct, we agree that, reasonably construed, the words "further prosecution" in the grant in issue did not invalidate the existing adjudication of the accused's guilt by the court-martial, and, therefore, did not prohibit review of its findings of guilty and sentence, as required by the Uniform Code of Military Justice.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge DUNCAN concur.